**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | |
|---|---|
| **JOSEPH MODESKI**<br>4058 Saint Augustine Lane<br>Baltimore, Maryland 21222<br>*Resident of Baltimore City* | Civil Action No.: |
| **GIOVANNI ZAMMITO**<br>7518 189th Street<br>Flushing, New York 11366<br>*Resident of New York City* | |
| **NATHAN DAMBOISE**<br>589 East Market Street<br>Marietta, Pennsylvania 17547<br>*Resident of Lancaster County* | Collective Action Claim |
| Plaintiffs, | |
| ***Individually and on Behalf of All***<br>***Similarly Situated Employees*** | |
| v. | <u>Jury Trial Requested</u> |
| **SUMMIT RETAIL SOLUTIONS, INC.**<br>227 Union Street<br>New Bedford, Massachusetts 02740 | |
| Serve: Allstate Corporate Services Corp.<br>      9 E. Loockerman Street, Suite 311<br>      Dover, Delaware 19901 | |
| Defendant. | |

## <u>COLLECTIVE ACTION COMPLAINT FOR WAGES OWED</u>

JOSEPH MODESKI, GIOVANNI ZAMMITO and NATHAN DAMBOISE, Plaintiffs, by

and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit

their Complaint against SUMMIT RETAIL SOLUTIONS, INC., Defendant, to recover unpaid

wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of

the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq*. (hereinafter, "MWPCL"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq*. (hereinafter, "PMWA");  and unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under the New York Labor Law, NYLL § 651, *et seq*. (hereinafter, "NYLL") and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant Summit Retail Solutions, Inc. ("Defendant") provides marketing services for various products. These products range from cleaning supplies to high end cosmetics, as well as toys, electronics and perishable food items. Defendant markets these products on behalf of its clients. Defendant's client base is extensive. Defendant maintains relationships with wholesale clubs, department stores, grocery stores and discount markets. Defendant develops marketing strategies for the various products sold at these establishments.

Defendant employs individuals to assist with marketing these products. These individuals hold the title of Brand Representative or Senior Brand Representative (collectively, "Brand Representative(s)"). Brand Representatives are assigned to the stores of Defendant's clients. They are primarily responsible for promoting products at these stores. They perform demonstrations and sales pitches for the products on display. They are required to assemble the displays prior to when their shifts begin and to take down the displays after their shifts are over.

Brand Representatives are also required to participate in weekly conference calls in regard to Defendant's company policies. This includes the implementation of different marketing techniques and sales strategies.

Plaintiffs were all employed as Brand Representatives. They had to perform all of the tasks described above. To complete these tasks, Plaintiffs and other Brand Representatives had to consistently work more than forty (40) hours each week. However, Defendant did not pay its Brand Representatives for all of their hours worked. This resulted from the illegal compensation plan implemented by Defendant. All of Defendant's Brand Representatives were paid according to this plan. It had the effect of reducing the wages that Plaintiffs and other Brand Representatives rightfully earned.

In accordance with Defendant's plan, Plaintiffs and other Brand Representatives were paid an hourly rate. They received weekly paychecks based on this rate and the total number of hours they reported. They were also eligible to receive commissions based on a percentage of sales generated from the products they marketed. The value of this percentage was calculated at the end of each week. This sum was then balanced against the weekly payments they received from the total number of hours they reported. This weekly accounting was referred to as the ledger.

A ledger would be deemed positive if the total percentage of sales generated each week from the products that a Brand Representative marketed exceeded the value of his or her weekly paycheck. A ledger would be deemed negative if the percentage was less than the amount of a Brand Representative's weekly check. The value would change at the end of each week based on the amount that would be added or subtracted from the ledger.

At the end of each month, if their ledger was positive, Plaintiffs and other Brand Representatives were eligible to receive a commission payment specific to the value of the ledger. If the ledger was negative, they would not receive any commissions.

In practice, Plaintiffs and other Brand Representatives rarely received any commissions. Defendant's unrealistic goals made it almost impossible for Brand Representatives' weekly sales to exceed their regular weekly wages. This would lead Plaintiffs' and other Brand Representatives' ledgers to consistently maintain a negative balance.

There were consequences for maintaining a negative balance. If Plaintiffs' and other Brand Representatives' ledgers remained in the negative for an extended period, they were subject to disciplinary actions, including termination. To avoid this, Plaintiffs and other Brand Representatives were advised to underreport their hours. If Brand Representatives were to report all of the hours they worked, they would be unable to maintain a positive ledger. By underreporting their hours, they could ensure their sales would exceed their weekly payments. In turn, this would guarantee a positive ledger. This would protect them from termination or other negative repercussions.

Defendant's payment structure was not a *bona fide* commission system. Instead, Defendant designed a system that would cause its employees to strive to meet unattainable sales goals. This system was nothing more than a scheme that compelled Brand Representatives to underreport their hours.

Due to having to underreport their hours, Plaintiffs and other Brand Representatives were not paid for many hours of work. In turn, they failed to receive overtime wages for all hours worked over forty (40) in a week.

Defendant evaded the payment of wages owed to Plaintiffs and other Brand Representatives. This conflicts with the standards set forth by the FLSA and numerous state wage laws. Defendant is currently engaged in this unlawful activity. Hundreds of Brand Representatives continue to be cheated.

## THE PARTIES

1.      Plaintiff Joseph Modeski (hereinafter, "Modeski") is an adult resident of Baltimore City, Maryland.

2.      Plaintiff Giovanni Zammito (hereinafter, "Zammito") is an adult resident of New York City, New York.

3.      Plaintiff Nathan Damboise (hereinafter, "Damboise") is an adult resident of Lancaster County, Pennsylvania.

4.      Defendant Summit Retail Solutions, Inc. (hereinafter, "Defendant") is an incorporated for profit business registered in Delaware.[1]

5.      Defendant's primary office is in New Bedford, Massachusetts.

6.      Defendant conducts business throughout the Eastern United States. This includes Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Delaware, Maryland, Virginia, Pennsylvania, North Carolina, South Carolina, Georgia, Florida, Ohio, West Virginia, Vermont and Mississippi.

7.      Defendant's business centers on providing marketing services on behalf of its clients. This entails encouraging customers to purchase products sold at its clients' establishments. These establishments include department stores, grocery stores and wholesale retailers.

8.      Defendant employs Brand Representatives to market the products at these establishments.

---

[1] Any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation either, explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency.  To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

9. From approximately October, 2014 until March, 2017, Plaintiff Modeski was employed as a Brand Representative. He was assigned to market products at various establishments in Maryland. These establishments include BJ's, Costcos and Sam's Club.

10. From approximately March, 2015 until September, 2015, Plaintiff Zammito was employed as a Brand Representative. He was assigned to market products at various establishments in New York. BJ's was one of these establishments.

11. From approximately January, 2017 until August, 2017, Plaintiff Damboise was employed as a Brand Representative. He was assigned to market products at various establishments in Pennsylvania and Maryland. He regularly performed his duties at BJ's and Sam's Club.

12. Due to the nature of its business, Defendant is subject to the FLSA, MWHL, MWPCL, PMWA and the NYLL.[2]

13. Due to the amount in revenues generated, Defendant is subject to the FLSA, MWHL, MWPCL, PMWA and the NYLL. Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

14. At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce; this is based on the duties they performed as part of their employment with Defendant.

15. Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b), MWPCL, § 3-501(b), PMWA § 333.103(g) and NYLL § 651(6).

16. At all times relevant, Plaintiffs and other Brand Representatives worked as non-exempt hourly employees for Defendant.

---

[2] Defendant does not meet the definition of a retail or service establishment. The services offered by Defendant do not include the final processing of sales.

17.     The duties assigned to Plaintiffs and other Brand Representatives do not satisfy the duties tests contained within any of the exemptions specified in the FLSA, MWHL, MWPCL, PMWA, or the NYLL.

18.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and others similarly situated.

19.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

20.     Defendant possessed and exercised authority to determine the hours worked by Plaintiffs and other Brand Representatives.

21.     Defendant had and exercised the authority to control Plaintiffs' tasks and the tasks of other similarly situated employees.

22.     Defendant had and exercised the authority to change the course of Plaintiffs' and other Brand Representatives' duties.

23.     Plaintiffs and members of the putative classes recognized Defendant's authority and obeyed Defendant's instructions.

24.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and methods of pay.

## JURISDICTION AND VENUE

25.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

26.     Discretionary supplemental jurisdiction of Plaintiffs' state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from the common nucleus of operative facts on which Plaintiffs' federal claims are based.

27.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

28.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; Defendant conducts sufficient business within the forum state as to constitute a submission to its laws. Defendant employs numerous residents of Maryland, which includes members of the proposed Collective. A substantial part of the events or omissions giving rise to the claims occurred in Maryland.

## **FACTUAL ALLEGATIONS FOR ALL CLAIMS**

29.     Defendant is in the business of marketing products. This includes skin and hair care items, cosmetics, toiletries, vitamins and other products focused on beauty and wellness. Home appliances, houseware and cleaning agents are other products marketed by Defendant. Toys and electronics are also included in Defendant's product portfolio. Defendant also markets cookware, silverware, perishable food items and similar products.

30.     These products are sold at Defendant's clients' establishments. These establishments include wholesale chains, retail departments, grocery stores and discount markets.

31.     Defendant employs Brand Representatives and Senior Brand Representatives (collectively referred to as "Brand Representatives") to facilitate the sale of these products.

32.     Plaintiffs and other similarly situated employees hold or held the title Brand Representative. They were assigned to work on location at the various establishments operated by Defendant's clients. Their duties centered on marketing products to patrons at these

establishments. This primarily entailed making sales pitches, performing product demonstrations and providing samples to customers.[3]

33.    Each Brand Representative was assigned to a particular geographic territory. Defendant referred to these territories as "pods." Each pod corresponded with a cluster of retail stores owned by Defendant's clients. Plaintiffs and other Brand Representatives were required to promote products at these stores. This primarily consisted of performing several-day long "shows" at the different stores within their region.

34.    The stores where they marketed products and the types of products they marketed were determined by Defendant. Defendant's market managers were the persons who usually made these decisions. Plaintiffs and other Brand Representatives had no say in these decisions. They had to follow Defendant's instructions in regard to all of their assigned tasks.

35.    Plaintiffs and other Brand Representatives were responsible for other tasks as well. They had to gather the products they would be marketing from inventory warehouses and transport them to their assigned stores.

36.    Upon arriving at their stores, Plaintiffs and other Brand Representatives had to then assemble the product displays. This entailed setting up products in accordance with inventory guidelines. They were also required to take apart the promotional displays at the end of their shifts.

37.    Plaintiffs and other Brand Representatives satisfied the requirements of their job and adequately performed their duties to benefit Defendant, as well as Defendant's clients.

38.    Plaintiffs and other Brand Representatives performed their duties to the extent required by Defendant.

---

[3] If customers decided to purchase these products, they would take the products up to the cashier at the end of their shopping trip. However, Defendant was not involved with the processing of any sales. Defendant's clients were solely responsible for this function.

39.     Plaintiffs and other Brand Representatives all worked the same schedules. They were typically scheduled to work Thursday through Sunday. They were scheduled to work ten (10) hours each day. On Thursdays and Saturdays, they were scheduled to work from 9:00 a.m. to 7:00 p.m. On Fridays, they were scheduled to work from 10:00 a.m. to 8:00 p.m. On Sundays, their schedule was from 8:00 a.m. to 6:00 p.m.

40.     Plaintiffs and other Brand Representatives were all paid in the same manner. They were paid in accordance with the pay system that Defendant described as hourly plus commission. In practice, Plaintiffs and other Brand Representatives were rarely, if ever, paid any commissions. Their pay was primarily based on an hourly rate they received.

41.     Brand Representatives were paid a base rate of twelve dollars ($12.00) an hour.

42.     Senior Brand Representatives were paid a base rate of fifteen dollars ($15.00) an hour.

43.     From the time his employment began until approximately 2015, Plaintiff Modeski was employed as a Brand Representative. His base rate of pay was twelve dollars ($12.00) an hour. From approximately 2015 to the end of his employment, Plaintiff Modeski was employed as a Senior Brand Representative. His base rate of pay was fifteen dollars ($15.00) an hour.

44.     For the duration of his employment, Plaintiff Zammito held the title of Brand Representative. His base rate of pay was twelve dollars ($12.00) an hour.

45.     For the duration of his employment, Plaintiff Damboise held the title of Brand Representative. His base rate was twelve dollars ($12.00) per hour.

46.     Plaintiffs and other Brand Representatives received weekly paychecks that were consistent with their hourly rate of pay. These checks were based solely on the number of hours they reported on their timesheets; commissions were not factored into these checks.

47.   In order to receive commission payments, Brand Representatives were required to accrue a pre-determined percentage of sales that exceeded the sum of their weekly paychecks. The dollar volume of this percentage was based on the volume of sales generated from the products they marketed.

48.   At the end of each month, Plaintiffs and other Brand Representatives were eligible to receive a commission for meeting certain sales goals. These goals were specific to the value of products that were actually sold at the establishments where they marketed products. Whether or not they met their goals was determined on a week to week basis.

49.   When the weekly percentage of sales from the products they marketed exceeded the sum of their weekly paychecks, a predetermined amount generated from the sales was added to a ledger. This amount was categorized as a commission.

50.   If the weekly sales percentage generated from the marketed products failed to exceed the sum of their weekly paychecks, the difference was subtracted from a Brand Representative's ledger.

51.   If a Brand Representative's ledger was positive at the end of the month, he or she would receive a commission payment based on the total percentage of sales the Representative accrued during that month. If a Brand Representative's ledger was negative, the Representative would not receive any commission payments.

52.   Plaintiffs and other Brand Representatives had to ensure that their ledgers never fell below negative three-hundred dollars ($-300.00). If their ledgers were under negative three hundred dollars ($-300.00) for too long, they could face disciplinary action. This includes being demoted or receiving a pay cut. If they maintained a negative balance for three (3) months in a row, Brand Representatives could be terminated.

53.     To avoid being terminated, Plaintiffs and other Brand Representatives would underreport their hours. It was Defendant's company policy to require its employees to underreport their hours. This policy was enforced for the duration of Plaintiffs' and other Brand Representatives' employment. This policy stemmed from the fact that the higher the Brand Representatives' hourly pay, the higher their commissions had to be in order to prevent a negative balance.

54.     Plaintiffs and other Brand Representatives would underreport their hours for a variety of reasons. For instance, the amount of commission attributable to any given product varied. Defendant routinely adjusted the percentage of gross sales from a given product that would be counted toward earning a commission. This percentage could change from week to week and was completely arbitrary. This made it difficult for Plaintiffs and other Brand Representatives to ascertain whether they would meet their weekly goals. It was often unclear whether their weekly sales would result in a positive or negative ledger. To ensure they were not in the negative, Plaintiffs and other Brand Representatives would underreport their hours.

55.     Defendant maintained complete control over Plaintiffs' and other Brand Representatives' assignments. This includes the stores where they marketed products and the particular products to be marketed. Defendant was aware of which combination of locations and products typically saw high returns.

56.     Defendant would assign Brand Representatives to market products at locations that would earn them large commissions, as well as to stores that made it nearly impossible to earn commissions. These assignments changed constantly; they could vary from week to week. These inconsistencies made it difficult for Plaintiffs and other Brand Representatives to maintain a positive ledger.

57.     It was also common for Brand Representatives to sell desirable and expensive products during one commission cycle and then have to sell less desirable products during the next. This would lead their sales to fluctuate constantly from week to week. They had no control over their profits and losses. This also made it difficult to maintain a positive ledger.

58.     Due to not having control over their assignments, during many workweeks, it was impossible to prevent a negative balance. Because of the repercussions that resulted from a negative balance, Defendant's agents advised Plaintiffs and other Brand Representatives to underreport their hours. Plaintiffs and other Brand Representatives followed Defendant's commands.

59.     By underreporting their hours, Defendant was able to mask its unlawful payment scheme. This scheme was implemented in bad faith; in no way did it resemble a valid commission system. Plaintiffs' and other Brand Representatives' assignments were distributed in a manner that made it extremely difficult to earn commissions. Underreporting their hours was the only way they had a chance.

60.     Plaintiffs and other Brand Representatives recorded their hours in Defendant's electronic time-keeping system. However, due to not reporting all of their hours, the hours recorded in the system did not reflect their true hours worked. They worked far more hours than they reported. They performed many time-consuming tasks off-the-clock.

61.     One of these tasks included setting up inventory and promotional displays prior to their shifts. On days they were scheduled to work, it was common for Plaintiffs and other Brand Representatives to report to work early in order to set up their work station. Due to not reporting all of their work hours, it was routine for Plaintiffs and other Brand Representatives to perform this task off-the-clock.

13

62.     In order to set up their work station, it was also typical for Plaintiffs and other Brand Representatives to report to their assigned stores on days they were not scheduled to work. They could spend hours setting up their work station on days off. They routinely performed this task off-the-clock.

63.     Breaking down their work stations at the end of their shifts was another off-the-clock task they performed. They would often spend hours after their shifts putting away inventory and cleaning their work stations. Plaintiffs and other Brand Representatives were not paid for these hours as a result of not documenting their time.

64.     They were also not paid for the time they spent participating in mandatory conference calls. Plaintiffs and other Brand Representatives were required to participate in three (3) to four (4) conference calls each week. These calls often occurred prior to when their shifts were to begin, or on days they were scheduled to be off. These calls were typically in reference to Defendant's sales and marketing strategies and could each last for over an hour. It was Defendant's practice to not to pay its Brand Representatives for the time spent on these calls.

65.     It was also Defendant's practice to not pay its Brand Representatives for picking up extra shifts. Understaffing was a constant problem throughout Plaintiffs' and other Brand Representatives' employment. This required them to work in excess of their scheduled hours. It was routine for them to work on days they were scheduled to be off.

66.     Working seven (7) days straight was common throughout a Brand Representative's employment. Due to underreporting their hours, it was common for Plaintiffs and other Brand Representatives to not be compensated for working these extra days. Many hours have gone unrecorded.

67.     Plaintiffs and other Brand Representatives consistently worked fifty (50) or more hours each week. There were times when they worked even more. Working overtime was integral

to their employment. However, since they did not record all of their work hours, Plaintiffs and other Brand Representatives failed to receive overtime wages. They were never properly paid at a rate of "time and a half" their regular rate of pay for all hours worked over forty (40) in a week. This was true for the duration of their employment.

68.    Defendant was well aware of the overtime hours worked by Plaintiffs and other Brand Representatives.

69.    Defendant permitted Plaintiffs and other Brand Representatives to work these overtime hours.

70.    Defendant encouraged Plaintiffs and other Brand Representatives to underreport their hours.

71.    There is no bona fide dispute that Plaintiffs and other similarly situated employees are owed overtime wages for all hours worked over forty (40) in a workweek.

72.    The duties performed by Plaintiffs and other Brand Representatives did not implicate any exemptions contained within the FLSA, MWHL, the MWPCL, PMWA or the NYLL.

73.    Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

### FLSA COLLECTIVE ACTION ALLEGATIONS

74.    Plaintiffs and other similarly situated employees work or worked as Brand Representatives or Senior Brand Representatives (collectively referred to as "Brand Representatives") for Defendant. The primary duties of both positions are the same.

75.    The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) within a workweek.

76.     Defendant knew or should have known that Plaintiffs and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

77.     Defendant suffered or permitted Plaintiffs and other Brand Representatives to work more than forty (40) hours per week.

78.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

79.     Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations.  Plaintiffs make these same demands on behalf of all members of the putative class.

80.     Plaintiffs consent to be party plaintiffs in this matter.  Plaintiffs' consent forms are attached to this Complaint as Exhibit A, Exhibit B and Exhibit C.

81.     It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

82.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

83.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

84.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

85.     Upon information and belief, others will choose to join Plaintiffs in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

**CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

86.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees, current and former, that served as Brand Representatives for Defendant and were subject to the following practices and policies: Denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek.

87.     Plaintiffs are members of the proposed class they seek to represent.

88.     The claims alleged by Plaintiffs are typical of the claims of the proposed class members.

89.     The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

90.     There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

91.     Counsel for the proposed class is qualified and experienced in litigating MWHL class actions and other complex litigation matters.

92.     Counsel is capable of providing adequate representation for all members of the proposed class.

93.     A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

### CLASS ACTION ALLEGATIONS UNDER NEW YORK WAGE LAWS

94.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees, current and former, that served as Brand Representatives for Defendant and were subject to the following practices and policies:

a.      Denial of overtime wages under NYLL for hours worked over forty (40) in a single workweek.

95.     Plaintiffs are members of the proposed class they seek to represent.

96.     The claims alleged by Plaintiffs are typical of the claims of the proposed class members.

97.     The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

98.     There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

99.     Counsel for the proposed class is qualified and experienced in litigating class actions and other complex litigation matters; furthermore, counsel is capable of providing adequate representation for all members of the proposed class.

100.    A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

**CLASS ACTION ALLEGATIONS UNDER PENNSYLVANIA WAGE LAWS**

101.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees, current and former, that served as Brand Representatives for Defendant and were subject to the following practices and policies:

b.      Denial of overtime wages under PMWA for hours worked over forty (40) in a single workweek.

102.    Plaintiffs are members of the proposed class they seek to represent.

103.    The claims alleged by Plaintiffs are typical of the claims of the proposed class members.

104.    The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

105.    There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

106.    Counsel for the proposed class is qualified and experienced in litigating class actions and other complex litigation matters; furthermore, counsel is capable of providing adequate representation for all members of the proposed class.

107.    A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### Count I.  Violation of the FLSA: Failure to Pay Overtime Wages

108.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

109.    Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

110.    As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiffs for these additional hours.

111.    Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked by advising Plaintiffs to underreport their hours.

112.    There is no *bona fide* dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

113.    Under the FLSA, Plaintiffs are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### Count II.  Violation of MWHL: Failure to Pay Overtime Wages

114.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

115.    Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

116.    Furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

117.    Plaintiffs have not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week. Defendant unlawfully compensated Plaintiffs for these additional hours.

118.    Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked.

119.    There is no bona fide dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

120.    Under MWHL, Plaintiffs are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### Count III.  Violation of NYLL: Failure to Pay Overtime Wages

121.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

122.     Pursuant to New York Labor Law § 651, *et seq.*, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

123.     Furthermore, pursuant to New York Labor Law § 651 *et seq.,* an employer shall compute the wage for overtime under § 651 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

124.     Plaintiffs have not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week. Defendant unlawfully failed to compensate Plaintiffs for these additional hours.

125.     Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked by unjustifiably paying Plaintiffs under the guise of a commission plan.

126.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

127.     Under NYLL, Plaintiffs are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### *Count IV.  Violation of PMWA: Failure to Pay Overtime Wages*

128.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

129.     Pursuant to the Pennsylvania Minimum Wage Act, § 333.104(c) each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate for each hour over forty (40) that an employee works during one (1) workweek.

130.     Plaintiffs have not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week. Defendant unlawfully failed to compensate Plaintiffs for these additional hours.

131.     Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked by unjustifiably paying Plaintiffs under the guise of a commission plan.

132.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

133.     Under PMWA, Plaintiffs are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### ***Count V. Violation of the MWCPL: Failure to Pay Wages Owed***

134.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

135.     Plaintiffs are entitled to wages under the Maryland Wage Payment Collection Law, Labor and Employment §§3-501 *et. seq.,* which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

136.     Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment in accordance with §3-505(a).  This is specific to Defendant's failure to pay Plaintiffs overtime for all hours worked over forty (40) in a workweek.

137.     Defendant willfully and intentionally withheld from Plaintiffs the wages they are owed and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

138.     There is no *bona fide* dispute that Plaintiffs are owed wages for work performed while employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated, pray for the following relief:

a)   Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b)   Designation of this action as a class action on behalf of Plaintiffs and all members of the proposed state classes;

c)   A finding that Defendant's classification of Plaintiffs and similarly situated employees as exempt was done in error;

d)   Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA;

e)   Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by MWHL;

f)   Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the MWPCL;

g)   Judgement against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the NYLL;

h)   Judgement against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the PMWA;

h)   An award against Defendant for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' regular hourly rate for all overtime hours worked, to Plaintiffs and those similarly situated;

i)   An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

j)  An award of treble damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

k)  An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendant;

l)  Leave to add additional plaintiffs, opt-in or party, through the filing of consent forms; and

m)  All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

_/s/  Benjamin L. Davis, III_____
Benjamin L. Davis, III (29774)
bdavis@nicholllaw.com
George E. Swegman (19444)
gswegman@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*