**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH MODESKI, *et al.* <br><br> Plaintiffs, <br><br> *Individually and on Behalf of All Similarly Situated Employees* <br><br> v. <br><br> SUMMIT RETAIL SOLUTIONS, INC. <br><br> Defendant. | Civil Action No. 1:18-cv-12383-FDS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS COLLECTIVE ACTION COMPLAINT**

Defendant Summit Retail Solutions, Inc. ("Summit" or the "Company") submits this Memorandum of Law in support of its Motion to Dismiss all claims asserted by Plaintiffs Joseph Modeski, Giovanni Zammito, and Nathan Damboise ("Plaintiffs"). Summit asks this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Collective Action Complaint (Dkt. 1) ("Complaint") in its entirety because Plaintiffs, who seek overtime compensation under federal law and the analogous laws of several states, were properly exempt outside sales employees and thus have no legal entitlement to overtime pay.

The Fair Labor Standards Act ("FLSA") provides an outside sales exemption ("OSE") to federal minimum wage and overtime pay requirements. 29 U.S.C. § 213(a)(1). That exemption is subject to an unusually simple two-part test: an employee is exempt if he or she (1) has a "primary duty" of "making sales"; and (2) is "customarily and regularly engaged [in making sales] away from the employer's place of business." 29 C.F.R. § 541.500(a). Plaintiffs satisfy both prongs and are not subject to overtime pay requirements.

As to the first prong, applying the "functional" or "realistic" definition of "sales" that the Supreme Court articulated in *Christopher v. SmithKline Beecham Corporation,* 567 U.S. 142 (2012), Plaintiffs' own allegations about their working activities establish that their primary duty was making sales. They engaged with individual potential customers at retail stores or warehouse clubs for the purpose of convincing those individuals to purchase specific products during that shopping trip. The Supreme Court explained in *Christopher* that this type of activity constitutes "making sales" for purposes of the OSE, and courts have since applied the same reasoning in a variety of contexts.

As to the second prong, Plaintiffs' Complaint alleges that they perform essentially all of their work at retail and other stores not owned by Summit, and Plaintiffs allege that they were moved from location-to-location with a relatively high degree of frequency. Complaint ¶¶ 9-11. Given Plaintiffs' itinerant movement from store-to-store, such locations cannot be considered Summit's places of business for purposes of the OSE. 29 C.F.R. § 541.502. Thus, Plaintiffs were customarily and regularly engaged in making sales away from Summit's place of business, and they were properly exempt.

Plaintiffs' own Complaint reveals them to have no entitlement to overtime compensation, and there is no cause for the Court or the parties to squander the substantial resources necessary to engage in the discovery and motion practice that typically accompanies a putative FLSA collective action and state law class action. The Court should dismiss Plaintiffs' Complaint in its entirety for failure to state a claim upon which relief can be granted.

## **FACTS**

The facts alleged in the Complaint, which are assumed to be true only for purposes of the present motion, are as follows.

Summit's Business

As Plaintiffs characterize it, "Defendant's business centers on providing marketing services on behalf of its clients.  This entails encouraging customers to purchase products sold at [Summit's] clients' establishments . . . [including] department stores, grocery stores and wholesale retailers."  Complaint, ¶ 7; *see also* ¶¶ 29-30 ("Defendant is in the business of marketing products . . . . These products are sold at Defendant's clients' establishments").  Defendant's Brand Representatives and Senior Brand Representatives market products at these stores by performing demonstrations, making sales pitches and providing samples to customers.  *Id.* Introduction ¶ 2, ¶¶ 30-32.[1]  The products include cosmetics, toiletries, home appliances, cleaning products, electronics, and food products.  *Id.*, ¶ 29.

Plaintiffs

Plaintiff Modeski worked as a Brand Representative "at various establishments in Maryland," including BJ's, Costco and Sam's Club.  Complaint, ¶ 9.  Plaintiff Zammito worked as a Brand Representative "at various establishments in New York," including at BJ's.  *Id.* at ¶ 10.  Plaintiff Damboise worked as a Brand Representative "at various establishments in Pennsylvania and Maryland," including at BJ's and Sam's Club.  *Id.* at ¶ 11.

Plaintiffs' Assignments

Summit "employs Brand Representatives . . . to facilitate the sale of products."  Complaint, ¶ 30. Plaintiffs "were assigned to work on location at the various establishments operated by Defendant's clients.  Their duties centered on marketing products to patrons at these

---

[1] Contrary to the requirements of Fed. R. Civ. P. 10(b) ("[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."), the Complaint includes a lengthy "Introduction and Background" section, the paragraphs of which are not numbered.  Citations herein to "Introduction," followed immediately by a paragraph number, are intended to direct the Court to those unnumbered paragraphs.

3

establishments. This primarily entailed making sales pitches, performing product demonstrations and providing samples to customers." *Id.*, ¶ 32. Plaintiffs were paid an hourly wage, with incentive compensation provided in the form of commissions for successful sales results. Complaint, ¶¶ 41-45 (describing hourly rate of pay), ¶¶ 47-49 (describing commission pay arrangements).[2]

Each Plaintiff was assigned to a particular geographic territory called a "pod." *Id.*, ¶ 33. Each pod corresponded with a cluster of retail stores operated by Summit's clients. *Id.* Plaintiffs' work consisted of performing several-day long "shows" at the different stores within their region. *Id.* Plaintiffs contend that their "assignments changed constantly" and "could vary from week to week." *Id.*, ¶ 56.

Summit maintains no permanent presence at its clients' locations. Instead, upon arriving at a client store, Plaintiffs assembled product displays used to promote the products they were charged with selling. *Id.*, ¶ 36. In light of the itinerant nature of the work, Plaintiffs "were also required to take apart the promotional displays at the end of their shifts." *Id.*[3]

Plaintiffs allege that they worked on-site at locations maintained by Summit's clients for ten hours per working day. *Id.*, ¶ 39. Of all of the activities described in Plaintiffs' Complaint, the only duties that took place at a location other than a retail store or similar site were attending three or four conference calls per week, which could last one hour each, and gathering products

---

[2] Plaintiffs contend that "Brand Representatives were rarely, if ever, paid any commissions." Complaint, ¶ 40. While this allegation is of questionable relevance to any claim that Plaintiffs assert and has no bearing on the present motion, this allegation is also a gross fabrication. In fact, in calendar years 2015 – 2018, Summit paid approximately $2,400,000 in commissions to Brand Representatives and Senior Brand Representatives, including payments totaling over $10,000 to Plaintiff Modeski, the only named plaintiff who worked for Summit for more than a few months.

[3] Plaintiffs were required to disassemble displays at the end of each "show," not the end of each shift.

from inventory warehouses. *Id.*, ¶¶ 35, 64. Plaintiffs allege no regular attendance at any facility owned, operated or controlled by Summit.

## ARGUMENT

Plaintiffs' failure to state a claim upon which relief can be granted warrants dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). The obligation to plead "enough facts to state a claim to relief that is plausible on its face" requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[4] *Twombly*, 550 U.S. at 555, 570. Neither a "legal conclusion couched as a factual allegation" nor conclusory allegations that merely recite the elements of a claim are entitled to a presumption of truth. *Twombly*, 550 U.S. at 555; *see also, Iqbal*, 556 U.S. at 678.

Plaintiffs' case rests on the contention that they are entitled to additional overtime compensation because they intentionally misrepresented and underreported their working hours in order to earn higher commissions and embellish their performance statistics. Complaint, ¶ 54.[5] This theory fails because Plaintiffs' own allegations establish that they were outside sales employees and have no legal entitlement to overtime pay. *Cangelosi v. Gabriel Bros.*, No. 15-

---

[4] When ruling upon a 12(b)(6) motion, a district court may consider the facts as they are alleged in the complaint, anything properly attached thereto and matters of public record. Fed. R. Civ. P. 12(b)(6), 10(c).

[5] Plaintiffs' Complaint includes prolix allegations to the effect that Plaintiffs underreported their own working hours for purposes of maintaining a "positive ledger" (i.e., ratio of hours worked to products sold) and otherwise manipulating Summit's commission system. Complaint, ¶¶ 53-63. Insofar as Plaintiffs contend that Summit directed or encouraged them to underreport their working time, those allegations are gross fabrications. Such allegations are, however, not germane to the present motion. All of Plaintiffs' legal claims in this matter pertain solely to payment of overtime compensation. Because Plaintiffs were exempt from overtime pay requirements as a matter of law, they cannot establish overtime pay liability under any of the statutes that they invoke, regardless of the number of hours they claim to have worked and/or recorded.

CV-3736 JMF, 2015 WL 6107730, at *1 (S.D.N.Y. Oct. 15, 2015) (granting motion to dismiss complaint because facts alleged establish that plaintiff was exempt from FLSA and New York Labor Law as outside salesperson); *In re Colonial Mortg. Bankers Corp. et. al v. Lopez-Stubbe et. al*, 324 F.3d 12, 16 (1st Cir. 2003) ("[A]n affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim"); *Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (affirmative defense may be raised in Rule 12(b)(6) motion "if the defense appears on the face of the complaint").

## I.   The Outside Sales Exemption

### A.   FLSA's Two-Part Test for Exempt, Outside Sales Employees

Pursuant to regulations promulgated by the U.S. Department of Labor interpreting and implementing the FLSA, an exempt outside salesperson is an employee:

(1) Whose primary duty is: (i) making sales . . . , and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a).[6]

Whether an employee's activities fall within an exemption is a question of law. *Holden v. Cenpatico Behavioral Health, LLC*, No. CV 15-14119-JCB, 2017 WL 10525889, at *6 (D. Mass. Sept. 22, 2017). As the Supreme Court recently held, FLSA exemptions must be fairly construed, *not* narrowly interpreted, as some lower courts had previously held. *Encino*

---

[6] Unlike certain other exemptions to the FLSA's minimum wage and overtime pay requirements, the OSE does not require the payment of a minimum salary to outside sales employees. 29 C.F.R. § 541.500(c). "[T]he regulations do *not* indicate that a court should consider a salesman's effective compensation in determining whether the [outside sales] exemption applies." *Meza v. Intelligent Mexican Mktg., Inc*., 720 F.3d 577, 586 (5th Cir. 2013) (affirming summary judgment for employer on outside sale exemption of route salesman) (emphasis added).

*Motorcars, LLC v. Navarro*, ___ U.S. ___, 138 S. Ct. 1134, 1142 (2018). "The narrow-construction principle relie[d] on the flawed premise that the FLSA pursues its remedial purpose at all costs." *Id.* (internal quotation marks omitted). However, because exemptions under the FLSA are "as much a part of the FLSA's purpose as the overtime-pay requirement," the Supreme Court now instructs that courts "have no license to give the exemption anything but a fair reading." *Id.*

### B. The State Laws that Plaintiffs Invoke Adopt the FLSA's Outside Sales Exemption

Plaintiffs' Complaint includes claims under the laws of Maryland (Counts II and V), New York (Count III), and Pennsylvania (Count IV), in addition to the FLSA.[7] Maryland and New York follow the FLSA's two-part test for the outside sales exemption. Md. Code Regs. § 09.12.41.13 (2018) ("'Outside salesman' has the meaning stated in 29 CFR §541.500 et seq."); *Orellana v. Cienna Props., LLC*, JKB-11-2515, 2012 WL 203421, at *5 (D. Md. Jan. 23, 2012) ("The requirements of the [Maryland Wage and Hour Law] 'mirror' those of the FLSA, and claims under both statutes therefore stand or fall together."); N.Y. Comp. Codes R. & Regs. tit 12, § 142-3.12(c)(3) (2016) ("outside salesperson means an individual who is customarily and predominantly engaged away from the premises of the employer and not at any fixed site and location for the purpose of . . . making sales"); *Gold v. N.Y. Life Ins. Co.*, No. 09–CV3210 (WHP), 2011 WL 2421281, at *3 (S.D.N.Y. May 19, 2011) (New York Labor Law is "defined and applied in the same manner" as the FLSA). Pennsylvania follows the same test with one additional requirement: that the employee be "customarily and regularly engaged more than 80%

---

[7] While Plaintiffs assert a claim under the Maryland Wage Payment and Collection Law, in addition to a statutory overtime claim under Maryland law, they expressly state that this claim in Count V is "specific to Defendant's failure to pay Plaintiffs overtime for all hours worked over forty (40) in a workweek." Complaint, ¶ 136.

of work time away from the employer's place or places of business." 34 Pa. Code § 231.85. Here, because Plaintiffs' own allegations establish that they worked almost entirely at customer sites, and rarely or never worked at any place of business owned or controlled by Summit, the 80% requirement is not in question.

### C. Application of the Outside Sales Exemption

#### 1. Primary Duty of Making Sales

Plaintiffs' primary duty was making sales because their job was to convince customers to purchase particular products by demonstrating the products, answering questions or providing samples if possible, and otherwise convincing customers to make a purchase.[8] *See* Complaint, ¶ 31 ("Defendant employs Brand Representatives . . . to facilitate the sale of [specified] products."). The concept of "making sales" under the FLSA is broad. 29 C.F.R. § 541.501(b) ("'sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition"); *Christopher,* 567 U.S. at 132 (sales, for purposes of the OSE is construed broadly and not limited to individuals processing purchases for customers).

In *Christopher*, the Supreme Court concluded that sales representatives in the pharmaceutical industry who obtain non-binding commitments from physicians to prescribe certain drugs meets the OSE "sales" requirement. 567 U.S. at 147. Relying on the DOL's statement that the sales requirement is met when an employee "in some sense make[s] a sale" and that "[e]xempt status should not depend on technicalities," *id.* at 149, the Court applied a "functional, rather than a formal, inquiry [] that views an employee's responsibilities in the

---

[8] The "term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The amount of time spent performing exempt sales work is useful, but not dispositive, in resolving an employee's "primary duty." *Id.* Determining an employee's primary duty requires consideration of all of the facts in a specific case, "with the major emphasis on the character of the employee's job as a whole." *Id.*

8

context of the particular industry in which the employee works." *Id.* at 161.  The Court concluded that even a non-binding commitment to prescribe certain drugs is "tantamount" to a sale for purposes of the OSE.  *Id.* at 164.

The Court reached its result by interpreting the term "sales" in accordance with "Congress' intent to define 'sale' in a broad manner." *Id*. at 163.  First, the Court noted that the definition uses the verb "includes" ("includes any sale, exchange, . . . .") instead of "means," and thus is intended to be illustrative, not exclusive.  *Id*. at 162.  Second, the Court noted that the list of transactions (sales, exchange, etc.) is modified by the word "any," which has an expansive meaning.  *Id.*  Third, the Court noted that Congress included the broad catchall phrase "other disposition," which the Court interpreted as "arrangements that are tantamount, in a particular industry, to a paradigmatic sale." *Id*. at 164.

Courts have applied *Christopher* beyond the pharmaceutical industry and concluded that a variety of employees who do not themselves process or finalize a sale fall within the OSE.  In *Moore v. Int'l Cosmetics & Perfumes, Inc*., No. EDCV41179DMGDTBX, 2016 WL 3556610, at *7 (C.D. Cal. June 24, 2016), the court granted summary judgment to a perfume and cosmetics company, concluding that plaintiffs who worked in department stores demonstrating defendant's products to potential customers and providing them with information about the products are outside sales employees.  *Id*. (noting there is no "substantive distinction between state and federal law" with respect to making sales prong of OSE).  Similarly, in *Flood v. Just Energy Mktg. Corp*., 904 F.3d 219, 224, 230-31 (2d Cir. 2018), the Second Circuit Court of Appeals affirmed summary judgment to an employer on the exempt status of a door-to-door salesman of natural gas and electricity, who obtained agreements with customers that could later be rejected by the company for various reasons, noting:  "Nor does *Christopher* state any baseline rule or

9

presumption that a salesman is not 'making sales' unless the salesman persuades customers to engage in binding purchase commitments not subject to any discretionary review or intervention by the employer or any third party." The *Flood* court concluded that the plaintiff's primary duties were even "more in the nature of 'making sales'" than the pharmaceutical sales reps at issue in *Christopher*. *Id.* at 231.

Summit's Brand Representatives were plainly engaged in making sales within the meaning of the FLSA. While Plaintiffs acknowledge that "Defendant's business . . . entails encouraging customers to purchase products at its client's establishments," Complaint, ¶ 7, a footnote suggest that Plaintiffs may seek to avoid the OSE by arguing that they are not engaged in making sales because other workers at the client's establishments process the sales at the cash registers in those stores. *See* Complaint, ¶ 32 n.3 ("If customers decided to purchase these products, they would take the products up to the cashier at the end of their shopping trip. However, Defendant was not involved in the processing of any sales."). Any such effort at a hyper-technical reading of the requirements of the OSE fails. The Supreme Court foreclosed this argument in *Christopher* by rejecting plaintiffs' theory that an employee is not subject to the OSE if someone else finalizes the sale "in a technical sense":

> [T]aken to its extreme, petitioners' theory would require that we treat as a nonexempt promotional employee a manufacturer's representative who takes an order from a retailer but then transfers the order to a jobber's employee to be filled . . . This formalistic approach would be difficult to reconcile with the broad language of the regulations and the statutory definition of "sale."

567 U.S. at 167. Similarly, the employees in *Moore* did not actually ring up any sales, and this was no impediment to the application of the exemption. 2016 WL 3556610, at * 2 ("[Plaintiffs] are not permitted to handle cash or work the cash registers at the department stores where they

work."). In light of the Supreme Court's functional approach to the OSE, there is no serious question that Plaintiffs' primary duty was making sales.[9]

### 2. Outside the Employer's Place of Business

There are two parts to the "outside" prong of the OSE: the work must be done (a) "customarily and regularly" (b) away from the employer's place of business. Plaintiffs' own allegations demonstrate that they worked almost entirely at retail locations maintained by Summit's clients, and they spent little or no time at any fixed location maintained by Summit. There is hence no doubt that they satisfied the "outside" component of the OSE.

#### a. Plaintiffs Were Engaged Away From Summit's Place Of Business

Plaintiffs were engaged away from their employer's place of business because the stores at which Plaintiffs worked were not Summit's place of business. The regulation defining "away from the employer's place of business" explains that "[t]he outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home." 29 C.F.R. § 541.502.

Plaintiffs make no allegation that they ever conducted any work at Summit's place of business. Instead, they contend that "[t]hey were assigned to work on location at the various establishments operated by Defendant's clients." Complaint, ¶ 32. "This primarily consisted of performing several-day long 'shows' at the different stores within their region." Complaint, ¶ 33. "They had to gather the products they would be marketing from inventory warehouses and

---

[9] Plaintiffs' allegations that they were required to set up and break down displays is also no impediment to their exempt status. "Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work." 29 C.F.R. § 541.503. Plaintiffs' work in setting up product displays was incidental to their own exempt sales. *See Ackerman v. Coca–Cola Enters., Inc.*, 179 F.3d 1260, 1267 (10th Cir. 1999).

transport them to their assigned stores." *Id.*, ¶ 35. "Upon arriving at their stores, Plaintiffs . . . had to then assemble the product displays." *Id.*, ¶ 36. They would then "encourag[e] customers to purchase products sold at [Summit's] clients' establishments." *Id.*, ¶ 7. "These assignments changed constantly; they could vary from week to week." *Id.*, ¶ 56. The DOL addressed similar circumstances in a 2008 Opinion Letter applying the OSE to sales personnel who conducted promotional events of finite duration at various sites. The DOL described these employees as follows:

> [The] salespersons sell novelty items at promotional events and other locations. The salespersons report to [the employer's] place of business at 7:30 a.m. to retrieve the product from the employer's inventory as well as promotional brochures, receipt books, and folding tables. The salespersons also attend a motivational sales meeting before traveling to the assigned sales location/event. The salespersons sell the product at one location/event for approximately three to six days.

DOL Opinion Letter FLSA2008–6NA (May 8, 2008). Under these circumstances, the DOL opined, "[t]he locations where the salesperson sells novelty items are fixed sites, but would not be considered the employer's place of business because the salesperson remains there for only a short time period (approximately three to six days), and the sites are retail stores." *Id.*; *Barth v. Champion Roofing, Inc.*, No. 11 C 2025, 2011 WL 2395555, at *1 (N.D. Ill. June 10, 2011) (entering summary judgment for employer on outside sales exemption and rejecting argument by roofing salesman that employer's "places of business" included job sites, concluding such argument "lacks any support in the case law or the relevant regulations"); *see also Cangelosi v. Gabriel Bros.*, No. 15-CV-3736 JMF, 2015 WL 6107730, at *2 (S.D.N.Y. Oct. 15, 2015) (dismissing complaint of jewelry salesman who regularly sold jewelry at customers' places of business); *Lane v. Humana Marketpoint, Inc.*, No. 1:09-CV-380-MHW, 2011 WL 2181736, at *9 (D. Idaho June 3, 2011) (entering summary judgment for employer on outside sales exemption as to insurance sales representatives required to keep weekly hours at Walmart in

12

addition to other activities, noting "the Court does not agree with Plaintiffs' contention that various public locations would also be considered Humana's place of business"). This analysis requires a conclusion that Plaintiffs in the present action also were engaged away from Summit's place of business. Indeed, unlike the employees addressed by the DOL's opinion letter, Plaintiffs here do not even allege that they made daily reports to Summit's place of business to retrieve inventory or participate in meetings; their allegations reflect that their work occurred entirely outside of Summit's locations.

### b. Plaintiffs Were Customarily and Regularly Engaged to Work Away From Their Employer's Place Of Business

There is also no doubt that Plaintiffs "customarily and regularly" worked away from Summit's place of business because they claim to have spent almost all of their working time at stores operated by Summit's clients. Plaintiffs allege that they worked in such stores approximately forty (40) hours per week. Complaint, ¶ 39 (asserting standard working schedules of ten hours per day, Thursday through Sunday). The only time they allege to have worked in a location *other than a store* was attending 3 to 4 hours per week of training calls and gathering products from inventory warehouses. *Id.*, ¶¶ 35, 64.

Plaintiffs' level of outside work was well above the relatively modest threshold for customary and regular activity. "Customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. In fact, even engaging in sales or sales-related activity outside the office only "one or two hours a day, one or two times a week" satisfies the second prong of the OSE. *See* DOL Wage Hour Op. Ltr. No. FLSA2007–2 (Jan. 25, 2007); *Taylor v. Waddell & Reed, Inc.*, No. 09CV2909 AJB WVG, 2012 WL 10669, at *4 (S.D. Cal. Jan. 3, 2012) (employee who "spent 'easily 30 or 40 percent' of his time in any given week on sales activity outside the office, . . . far surpasses the

'customarily and regularly' threshold under the [OSE]"); *Lint v. Northwestern Mutual Life Ins. Co.,* 2010 WL 4809604 at *3 (S.D.Cal. Nov. 19, 2010) (employee spending 10–20 percent of working time outside of the office engaged in sales activity is sufficient to meet the OSE); *Billingslea v. Brayson Homes, Inc.*, 2007 WL 2118990, at *3-4 (N.D. Ga. Mar. 15, 2007) (home sales employees who spent at least three hours per week attending construction meetings, twelve hours per week walking spec houses in the community, and four hours per week shopping the competition, were properly classified as exempt). Plaintiffs' outside sales activity was thus customary and regular, and they were exempt from state and federal overtime pay requirements as a matter of law.

## CONCLUSION

Plaintiffs' allegations establish that their primary duty was making sales and that they were customarily and regularly employed away from Defendant's place of business. As such, they were exempt outside sales employees as a matter of law, and all five counts of their Complaint seeking overtime compensation on various theories fail. As such, the Court should dismiss Plaintiffs' Complaint in its entirety.

DATED: January 18, 2019

Respectfully Submitted,

DEFENDANT
SUMMIT RETAIL SOLUTIONS, INC.

By Its Attorney:

*/s/ Barry J. Miller*

Barry J. Miller (BBO# 661596)
SEYFARTH SHAW LLP
Two Seaport Lane, Ste. 300
Boston, MA 02210
(617) 946-4800
bmiller@seyfarth.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing document was filed through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

                                        */s/ Barry J. Miller*
                                        Barry J. Miller

54340056v.1